UTZURRUM LAW OFFICES, A.P.C.
Joe Utzurrum, Esq.
Cal Bar Number 171701
12121 Wilshire Boulevard
Suite 810
Los Angeles, California 90025
Tele 310.887.1387
Email joe@ulawoffices.com

Attorneys for plaintiff, LANA ALDOS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LANA ALDOS,<br><br>Plaintiff,<br><br>vs.<br><br>ENTERPRISE RENT-A-CAR COMPANY OF LOS ANGELES, LLC,<br><br>Defendant. | Case No.:<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>Federal Question Jurisdiction 28 U.S.C. §1331<br><br>Trial Date: TBD<br>Trial Time: TBD<br><br><u>Claims for Relief</u><br><br>(1) Race Discrimination 42 U.S.C. §1981 (Equal Rights Under the Law)<br>(2) Violation of Unruh Civil Rights Act *Civil Code* §51<br>(3) Intentional Infliction of Emotional Distress |

Plaintiff, Lana Aldos ("**Ms. Aldos**" or "**Plaintiff**"), hereby by and through his counsel of record, hereby allege as follows:

## I. JURISDICTION AND VENUE

1. This court has original jurisdiction under 28 U.S.C. §1331, because plaintiff's claim arises under 42 U.S.C. §1981.

2. This court has supplemental jurisdiction over the transactionally related state court claims pursuant to 28 U.S.C. §1367, because plaintiff's state law claims arise from a common nucleus of operative facts as the federal court claims such that plaintiff would ordinarily be expected to try them all in a single judicial proceeding.

3. Venue is proper in this court as the wrongdoing of which plaintiff bases her claims occurred in Los Angeles, California.

## II. PARTIES

4. Defendant, ENTERPRISE RENT-A-CAR COMPANY OF LOS ANGELES, LLC (**Enterprise**), is, and was at all relevant times, a corporation incorporated under the laws of the Delaware having its principal place of business in the California. Enterprise is in the business of, in part, renting cars.

5. Plaintiff, Lana Aldos (**Ms. Aldos**) is, and was, at the time of the herein described incident domiciled in the city of Los Angeles, California, however is currently domiciled and a citizen of Maryland.

6. At all times herein mentioned, each defendant was the agent, principal, master, servant, employer, employee, partner, and joint venturer of the co-defendants, and in doing the things hereinafter mentioned, was acting in the scope of his authority as such, and with the permission and consent of his co-defendants, and each of them.

## III. FACTS COMMON TO ALL CAUSES OF ACTION

7. Ms. Aldos is of Middle Eastern origin, specifically, she is from Syria, and she is of the Muslim faith.

8. Ms. Aldos is a Ph.D. candidate at Johns Hopkins University, which is a recognized educational and research institution. Ms. Aldos obtained an M.S. degree from Johns Hopkins and has an Ivy League undergraduate degree from Cornell University. She was at the time living in Los Angeles and was

completing her Ph.D. remotely.

9. In anticipation of the upcoming Labor Day weekend and after extensive plans made to visit Joshua Tree National Park, Ms. Aldos arranged for a car rental from Enterprise. The rental car was to be picked up on September 2, 2023, at the Enterprise located at 4550 Beverly Blvd., Los Angeles, California 90004 (**Hancock Park Enterprise**). To such end, on September 2, 2023, Ms. Aldos arrived at the Hancock Park Enterprise with a friend to pick up the arranged vehicle.

10. On September 2, 2023, Ms. Aldos entered the facility and approached the Enterprise agent, "Andy", who then asked for the name on the reservation. Ms. Aldos indicated that the name on the reservation was, "Lama Alasfar", her mother, and handed "Andy" her mother's driver's license, and a credit card. Ms. Aldos had rented cars in the past and knew that the usual initial process was to give the car rental agency a valid driver's license and an active credit card.

11. "Andy" informed Ms. Aldos that her mother must be present to fulfill the reservation. Ms. Aldos then handed "Andy" her own Illinois driver's license and requested that the reservation be transferred to her, i.e., to Ms. Aldos. "Andy" tersely responded that the transfer of the reservation "cannot be done".

12. Although already having informed Ms. Aldos that a transfer of the reservation cannot be completed, "Andy" further informed Ms. Aldos that he had to run a "background check" on Ms. Aldos. Ms. Aldos agreed to have Enterprise conduct an official investigation to verify Ms. Aldos' identity. Ms. Aldos had no issue with such an investigation to facilitate a car rental because she was under pressure to have transportation for the weekend and there was no event that occurred in her twenty-three years of life that would preclude her from the ability to rent a car. That is to say, any such investigation would establish that she was, and is, who she was, and is, then and now.

13. Strangely, using what appeared to be his own personal cell phone, "Andy"

took multiple photos of Ms. Aldos' Illinois driver's license and credit card under the pretext of sending them to his manager for risk assessment. Ms. Aldos did not authorize "Andy" to take photos of her driver's license and credit card on his personal device and circulate the same to an Enterprise manager on his or her unsecured personal cell phone/computer device. "Andy" took the photos without asking for permission. As such, Enterprise employees had her personal information on their personal devices, who could potentially, intentionally or negligently, transmit such personal data to others for nefarious purposes or adverse consequences. The Enterprise agent's conduct was a clear violation of Ms. Aldos' right to have her personal and private data and information remain secure.

14. While a supposed "risk assessment" was being conducted by Enterprise agents, Ms. Aldos called Enterprise's customer service line and created a new reservation under her name. Ms. Aldos was forced to take proactive conduct, because of the immediacy of her looming long-weekend plans.

15. After making the reservation through Enterprise's customer service telephone representative, while at the Hancock Park Enterprise, Ms. Aldos gave "Andy" her new reservation number which was made under her name and was confirmed telephonically by the reservation agent. Despite confirming the new reservation, "Andy" refused to rent a vehicle to Ms. Aldos and cited an Enterprise policy against accepting Illinois driver's licenses due to a "recent risk of fraudulent activities."

16. Shocked that the citizens of the whole state of Illinois, which the United States Census Bureau in 2020 listed as having a population of 12,812,508 people, was eliminated from Enterprise's target market, Ms. Aldos then asked the Enterprise employee to show her the policy.

17. Within earshot of Ms. Aldos, "Andy" walked over to a coworker's desk and sarcastically stated that his showing her of the Enterprise policy relating

to Illinois drivers, “will not change anything.”

18. “Andy” showed Ms. Aldos a document purporting to list certain very specific restrictions on Ohio and Tennessee licenses, with a handwritten "Ohio, Tennessee, *Illinois*" to the document [emphasis added.]

19. In order to secure her rights and evidence of the unbelievable acts of Enterprise’s agents, Ms. Aldos asked for permission to take a picture of the document. “Andy” refused. After persistent requests from Ms. Aldos and after her threat of law enforcement intervention, “Andy” *allowed* Ms. Aldos to take a photograph of the document. (**GP32 Document**) (Photo of GP32 Document shown to Ms. Aldos attached hereto and labelled as Exhibit “1”, incorporated herein by this reference.)

20. The GP32 Document was headlined, “Fraudulent Rental Ring GP32”, an apparent group, gang, or criminal enterprise. The particulars in the document warned Enterprise agents about renting vehicles to persons who exhibited certain characteristics and made car rental requests under certain listed conditions. However, the warning signs listed that Enterprise attempted to bring to the attention of its agents did not list any factors common to renting to a person such as Ms. Aldos. More closely, there was no connection or similarity to the characteristics that Ms. Aldos exhibited to those warned about in the GP32 Document.

21. Ms. Aldos was pretextually excluded from renting a car, because she was an apparent participant in a “Fraudulent Rental Ring”. The thought is preposterous to any reasonable person. Since Ms. Aldos’s inclusion in the “Common factors are listed below” was beyond ludicrous. Ms. Aldos pointed out to “Andy” that he is not acting within the guidelines of Enterprise’s stated policy and she does not have any of the characteristics warned about in the GP32 Document. To no end, Enterprise continued to deny Ms. Aldos a car rental *because of* the stated policy and “factors” in the document.

22. To add greater pain to Ms. Aldos' Enterprise experience, she was coerced to wait for a prolonged period, at least an hour and a half, while "Andy" claimed to be "checking her information." After waiting, "Andy" indicated to Ms. Aldo and her friend that Enterprise would not rent her a car, eventually saying "You need to leave. We are not renting a car *to you guys*."

23. Ms. Aldos and her partner waited outside the facility while they again called customer service and complained about "Andy's" behavior and her inability to rent a car. After repeated calls to Enterprise's customer service Enterprise did not rent a car to Ms. Aldos, effectively destroying her plans for the weekend where she lost a substantial amount of money, especially vis-à-vis, living on a Ph.D. candidate's income, where every penny counts.

**Blatant Discrimination**

24. The most dangerous and damaging evidence that exists is that Ms. Aldos is of Middle Eastern Origin, specifically Syria. It is apparent that she is not White. Most importantly, Enterprise's true colors were exposed when Ms. Aldos presented her driver's license to Enterprise. In her Illinois driver's license, Ms. Aldos wears a hijab which is defined as a head covering worn by Muslim women. "Andy", Enterprise's agent, showed a markable and significant negative reaction when Ms. Aldos presented her driver's license. It was and outward visceral reaction of great prejudice, distaste, and disapproval, at Ms. Aldos' national origin and Muslim faith.

25. Agents at the Hancock Park have been accused of racism in the past and Enterprise has done nothing to address this issue. On information and belief, Andy was accused of being a racist in the past in an online review.

26. The pretextual document and the directed "factors" and "guidance" to be considered therein are so massively disconnected from the facts presented to the Enterprise agents at the Hancock Park Enterprise that the *only* reasonable conclusion is that Ms. Aldos experienced Racism even in its

most narrow definition and was the victim of Enterprise's policy, including in its use of the pretextual document, of promoting racism against persons of color and prejudice against accepted and acceptable forms of faith.

## I. FIRST CLAIM

(Race Discrimination 42 U.S.C. §1981 – Equal Rights Under the Law – Against Enterprise)

27. Plaintiff incorporates by reference paragraphs 1 through 26 as though fully set forth herein

28. 42 U.S.C. §1981 provides:

> (a) Statement of Equal Rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and Enforce Contracts" Defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection Against Impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

29. Plaintiff was prevented from making a contract with defendants

because she was not white.

30. The conduct of defendant, its agents, and employees, were intended to and did cause the prevention of plaintiff, a United States Citizen, to not enjoy the benefits of a rental car contract that is enjoyed by white citizens.

31. Defendant's policies, including those contained set forth in the GP32 Document was specifically designed to allow Defendant, and its agents and employees, to exercise unfettered discretion to exclude person's similarly situated as plaintiff, a non-white person who is of the Muslim faith, from executing and enjoying the benefits of a car rental contract, which white citizens normally and usually execute and enjoy.

32. The conduct of defendant, its agents and employees, were intended to and did cause the impairment in the execution and performance of, and the enjoyment of, all benefits, privileges, terms, and conditions of the contractual relationship between plaintiff, on the one side, and Enterprise, and its agents on the other side.

WHEREFORE, plaintiff prays for judgment as set forth below.

## II.  SECOND CLAIM

(Violation of Unruh Civil Rights Act - *Civil Code* §51– Against all Defendants)

33. Plaintiff incorporates by reference paragraphs 1 through 32 as though fully set forth herein.

34. The Unruh Civil Rights Act, *Civil* Code §51, guarantees every person in California "full and equal" access to "all business establishments of every kind whatsoever" and imposes a duty on business establishments to serve all persons without arbitrary discrimination, including common carriers such as defendants.

35. Plaintiff is a member of a protected class of which the Unruh Civil

Rights Act was enacted to protect, specifically plaintiff is, and was, of Syrian ancestry, Middle Eastern descent, a Muslim, and wears a hijab.

36. Defendant and its agents and employees acts were discriminatory in nature wherein defendants singled out plaintiff and otherwise subjected plaintiff to unequal treatment, because plaintiff is of Syrian ancestry, Middle Eastern descent, a Muslim, and wears a hijab. Plaintiff was singled out and subjected to unequal detrimental treatment by defendant, because of her race, color, ancestry, national origin, religious belief (Islam), and the representative clothes she wears.

37. Plaintiff was thereby denied of the privilege to be free of the oppressive discriminatory conduct and harassment of Enterprise, its agents and employees, a privilege guaranteed to plaintiff by the United States Constitution, the California State Constitution and other federal and state laws.

WHEREFORE, plaintiff prays for judgment as set forth below.

## III. THIRD CLAIM

(Intentional Infliction of Emotional Distress – Against all defendants)

38. Plaintiff incorporates by reference paragraphs 1 through 37 as though fully set forth herein.

39. Defendants' conduct was outrageous and so extreme as to go beyond all bounds of decency tolerated by society, because defendants' conduct was racist and otherwise discriminatory in nature.

40. Defendants' conduct was intentional and otherwise at the minimum, carried out in reckless disregard.

41. The emotional distress plaintiff sustained was severe and enduring and was to such an extreme and severe extent that no reasonable person in a civilized society should be expected to endure.

WHEREFORE, plaintiff prays for judgment as set forth below.

WHEREFORE, plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

Plaintiff, Lana Aldos prays as to its First through Third Claims:

1. For judgment, interest and cost of the suit;
2. For compensatory damages in the amount of $250,000.00;
3. For prejudgment interest;
4. For statutory damages;
5. For attorney's fees;
6. Punitive damages in the amount of $1,250,000.00;
7. For such other relief as the court may deem just, proper and equitable.

Dated: March 26, 2024          UTZURRUM LAW OFFICES, A.P.C


By: /s/Joe Utzurrum
Joe Utzurrum, Attorney for plaintiff, Lana Aldos

## DEMAND FOR JURY TRIAL

Plaintiff, Lana Aldos, herein demands that the causes of action herein set forth be tried in front of a jury.

Dated:  March 26, 2024                        UTZURRUM LAW OFFICES, A.P.C

By:  /s/Joe Utzurrum
Joe Utzurrum, Attorney for plaintiff, Lana Aldos

Exhibit 1

**Fraudulent Rental Ring GP32**

Common factors are listed below: OHIO, TENNESSEE, ILLINOIS

CALL KATZ!!!

- Reservations are made through Enterprise and Alamo
- Same day reservation
- Vehicles targeted have been large SUVs and Trucks
- Using OH and TN driver licenses
- Renter names include **Tiffany Heard, Sparkle Davis, Devionne Jacobs**
- Renter is altering profile DL number by a couple digits to bypass DNR. License may pass True ID.

Guidance:

- Ohio Licenses should have 2 letters and 6 digits. **Verify the license matches the profile Driver license.**
- Tennessee Licenses should be 9 digits, unspaced. **Verify the license matches the profile Driver License.**
- Utilize the ID Checking Guide and True ID to confirm validity.

